# United States Court of Appeals
## For the First Circuit

No. 00-2051

RICHARD G. ROGERS,

Plaintiff, Appellant,

v.

SOPHIA VICUNA, THOMAS KILMARTIN, THOMAS MARTIN, MICHAEL Y.
EDMONDS, FREDERICK T. PERRY, UNITED STATES,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Torruella, Circuit Judge,
Bownes, Senior Circuit Judge,
and Lipez, Circuit Judge.

Michael J. Walsh for appellant.
Angelo G. Spenillo, Attorney, Tax Division, with whom Claire
Fallon, Acting Assistant Attorney General, and Kenneth L.
Greene, Attorney, Tax Division, were on brief, for appellees
Vicuna, Kilmartin and the United States.
Kenneth H. Anderson, with whom Finneran, Byrne & Drechsler,
L.L.P. were on brief, for appellees Martin, Edmonds and Perry.

August 28, 2001

**LIPEZ, Circuit Judge.** Richard Rogers appeals from the summary disposition of his federal and state law claims against the United States, IRS agents Sophia Vicuna and Thomas Kilmartin, and Northborough, Massachusetts, police officers Sergeant Thomas Martin, Sergeant Michael Edmonds and Officer Frederick Perry. Finding no error, we affirm.

## I.

The facts of this case are straightforward. On March 5, 1998, Agents Vicuna and Kilmartin arrived at Rogers's home to seize his two vehicles pursuant to a levy. Rogers, a resident of Northborough, Massachusetts, had been involved with the IRS in a dispute over taxes that the IRS claimed he owed for the 1992 and 1993 tax years.[1] Between November, 1996 and the arrival of the agents on March 5, 1998, the IRS sent Rogers various notices informing him of his delinquency and indicating its intention to levy against his property if the delinquency was not resolved. Agent Vicuna also made at least one personal visit to the property. Although Rogers refused to have any substantive conversation with Vicuna and instead summarily ordered her off his property, he later admitted that he received the notices informing him of the intention to levy. Nonetheless, he took no action

---

[1] According to the IRS, Rogers owed $10,606.68 for the 1992 tax year and $17,643.44 for the 1993 tax year.

before either the tax court or the district court to prevent the imposition of the levy.

When the agents arrived on March 5th, they were accompanied by Sergeant Martin and a tow truck. The agents rang the doorbell and, when Rogers answered, informed him they were there to seize his two vehicles, a Jeep and a van, that were parked in one of Rogers's two driveways. This driveway was located at the north side of the house, and the cars were completely visible from the street. There were no signs on the property, no gates, and no other obstructions that could have prevented the agents from either seeing the vehicles from the public street or from reaching the vehicles.

The agents handed Rogers a Notice of Seizure--listing his two vehicles--as well as a Notice of Levy. Rogers, however, demanded that the agents produce a warrant or other document issued by a court. The agents did not have such a document, but nonetheless proceeded to seize the two vehicles. Throughout the incident, Rogers informed the IRS agents and Martin that they were trespassing on his property because they lacked a warrant, that he did not give them permission to be on his property, and that they should immediately leave. The agents and Martin did not comply. Rogers then appealed to Sergeant Martin, asking Martin to intervene to prevent the cars from being "stolen" by the IRS agents. Martin, however, refused to intervene, responding that the IRS agents' paperwork appeared to be in order. Rogers then requested that

-4-

Martin summon the Worcester County Sheriff's office, but Martin again refused, stating that the duties of the Sheriff's office did not extend beyond transferring prisoners.

Faced with Martin's refusal to intervene, Rogers began to remove some of his personal items from the vehicle. The IRS agents then requested the keys to the cars. Rogers gave them to Martin with the instruction that Martin was to protect his property. Martin gave the keys directly to the IRS agents. Agent Kilmartin then removed more of Rogers's personal items from the vehicle, putting them temporarily on the roof in a "provocative and insulting manner." These preliminaries completed, the cars were towed away, the agents and Martin left the scene, and Rogers returned inside.

Aside from Kilmartin's actions in removing Rogers's personal items, the entire scene was relatively nonconfrontational. Of all the participants, Martin was the only one armed, and then only with a pistol that remained in his holster during the entire seizure. Although Rogers expressed a feeling of duress because Martin was armed and stated that this duress caused him to hand over the keys to his cars, Rogers agreed that Martin never mentioned the gun. Moreover, Rogers also agreed that Martin had not acted out of personal animosity towards Rogers and had not acted intentionally to harm him. The entry onto Rogers's land and the seizure of his vehicles did not result in any physical contact, altercation or violence.

On March 7th, two days after the seizure, Rogers went to the Northborough Police Station, with a witness, to file a stolen vehicle report on the two vehicles. Officer Perry and Sergeant Edmonds met with Rogers and listened to his complaint. They refused, however, to accept a stolen vehicle report, reasoning that Rogers's real complaint was with the IRS. Rogers protested that the lack of a warrant or other document issued by a court necessarily meant that the cars were taken without the proper authority and were therefore stolen. Perry and Edmonds were unpersuaded and continued to refuse to accept a stolen vehicle report.

Approximately a month later, Rogers commenced an action against the IRS agents and the police officers in Massachusetts state court. That action was removed to federal court in late April of 1998. Rogers subsequently amended his complaint, asserting, against the IRS agents and Martin, state law claims of trespass, trespass vi et armis, conversion, intentional infliction of emotional distress, misfeasance, and malfeasance, as well as § 1983 claims of violations of his civil rights, and a conspiracy to violate those rights. These claims arose solely out of the defendants' actions on Rogers's property on March 5, 1998. The amended complaint also alleged claims of nonfeasance, § 1983 claims of violations of Rogers's civil rights and a conspiracy to violate those rights against Edmonds and Perry. Again, these legal

claims were based only upon the refusal to allow Rogers to file a stolen vehicle report.

After Rogers filed his amended complaint, the United States Attorney for Massachusetts issued a certification that each IRS agent had been acting "within the scope of his or her employment and office as an employee of the United States at the time that the incidents out of which plaintiff's claims arose occurred." Based upon this certification and the provisions of 28 U.S.C. § 2679, the United States sought to have itself substituted as the party defendant on Rogers's state law claims against the IRS agents. The district court granted this motion on January 18, 2000, leaving Vicuna and Kilmartin named personally as party defendants to Rogers's federal civil rights claims.[2]

The United States then filed a motion to dismiss the claims against it and Vicuna and Kilmartin. The district court granted this motion, concluding that none of Rogers's state law claims fell under "a statute with respect to which the United States has waived its sovereign immunity," and that therefore they were barred. The district court also dismissed Rogers's federal civil rights claims against Vicuna and Kilmartin on the ground that a remedy pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) was unavailable. Following this disposition, Martin, Edmonds,

---

[2]     Rogers has not appealed from this order.

-7-

and Perry filed a motion for summary judgment. The court granted this motion, reasoning that, under established precedent, Rogers had failed to demonstrate any constitutional violation, or, indeed, any impropriety on the part of the IRS agents that could form the basis of the claims against Martin. Furthermore, because the cars were not stolen, Rogers's claims against Edmonds and Perry could not stand. Rogers now appeals.

## II.

We first note that Rogers has failed to make any developed argument challenging the district court's determination that his state law claims against the United States are barred by sovereign immunity. By failing to develop such an argument, Rogers has abandoned any challenge to the decision. Rose v. Yeaw, 214 F.3d 206, 211 n.2 (1st Cir. 2000). Consequently, we turn to Rogers's claims against the individual defendants.

### A. The claims against Vicuna and Kilmartin

Although Rogers's amended complaint specifically referenced § 1983 in alleging that Vicuna and Kilmartin had violated Rogers's civil rights, § 1983 cannot form the basis of an action against individuals acting under color of federal law. Chatman v. D.E. Hernandez, 805 F.2d 453, 455 (1st Cir. 1986) ("Section 1983 applies to persons acting 'under color of state law' and not to persons acting

pursuant to federal law."); see also Rodriquez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997) (noting that a showing that defendant acted under color of state law is an essential element of a § 1983 claim). The district court looked past this error and instead read the complaint as making a claim against Vicuna and Kilmartin under the Bivens doctrine. Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971); Day v. Mass. Air Nat'l Guard, 167 F.3d 678, 683 (1st Cir. 1999) (noting that Bivens offers redress for constitutional violation under color of federal law, while § 1983 offers redress for constitutional violations under color of state law). The court concluded, however, that even so read, the complaint failed to state a claim upon which relief may be granted. "Congress has established what it considers adequate remedial mechanisms for constitutional violations that may occur within the administration of the tax laws." Under these circumstances, the court concluded that it should not create a Bivens remedy. Rogers takes issue with this decision.

We have noted in dicta that "we doubt that the creation of a Bivens remedy would be an appropriate response" to protect taxpayers from "an overzealous officialdom." McMillan v. United States Dep't of Treasury, 960 F.2d 187, 190 (1st Cir. 1991) (internal quotation marks omitted). At the same time, not all courts have agreed that a Bivens remedy is unavailable against individual IRS agents, with at least one

circuit indicating that a taxpayer may have a <u>Bivens</u> remedy against individual IRS agents for violations of first and fourth amendment rights. <u>Nat'l Commodity and Barter Ass'n</u> v. <u>Gibbs</u>, 886 F.2d 1240, 1248 (10th Cir. 1989). We do not have to resolve this issue in this case because we can readily affirm the district court on a different ground. <u>Geffon</u> v. <u>Micrion Corp.</u>, 249 F.3d 29, 35 (1st Cir. 2001) ("[C]ourt of appeals may affirm a grant of summary judgment on any ground supported by the record.") (citing <u>Burns</u> v. <u>State Police Ass'n of Mass.</u>, 230 F.3d 8, 9 (1st Cir. 2000)).

In order to state a <u>Bivens</u> violation, Rogers must have pled facts that "rise to the level of a constitutional violation." <u>McMillen</u>, 960 F.2d at 190. Rogers has not done so. The complaint reveals only that Vicuna and Kilmartin entered Rogers's property without a warrant or other document issued by a court authorizing that entry. As the district court correctly noted, however, the mere absence of a warrant is not automatically indicative of an impermissible search.

> The touchstone of [Rogers's] claims is whether Rogers had a reasonable expectation of privacy in his driveway. The Supreme Court has continually held that "what a person exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." <u>Katz</u> v. <u>United States</u>, 389 U.S. 347, 351 (1967). In the context of IRS property seizures, the Court has stated that warrantless seizures of vehicles parked on public streets, parking lots or other open places pursuant to tax liens are not a violation of the

-10-

> Fourth Amendment's prohibition on unreasonable
> seizures. G.M. Leasing Corp. v. United States,
> 429 U.S. 338, 351-52 (1977).

We have previously held that a person does not have a reasonable expectation of privacy in a driveway that was visible to "the occasional passerby." United States v. Hensel, 699 F.2d 18, 32 (1st Cir.), cert. denied, 464 U.S. 823 (1983).

Even more to the point, United States v. Roccio, 981 F.2d 587 (1st Cir. 1992), is on all fours with the present case. In Roccio, we held that IRS agents, who had entered private property and seized a taxpayer's vehicle pursuant to a levy, "needed no warrant to seize the automobile." Id. at 591. A warrant was not required because the taxpayer's vehicle "was clearly visible from the street on an unobstructed driveway." Id. In order to state a Fourth Amendment claim, therefore, Rogers needed to plead facts that would distinguish the IRS agents' seizure of his vehicles from the seizure in Roccio. His complaint, however, is devoid of any such assertion.

Rogers attempts to distinguish Roccio on two grounds. First, he notes that the taxpayer's car in Roccio was located in his girlfriend's driveway, whereas Rogers's cars were located on his own property, a distinction that Rogers claims should make a difference in the outcome. See Roccio, 981 F.2d at 589. This argument, which may be a reference to the doctrine of Fourth Amendment standing, is singularly unpersuasive. Although it is true that citizens only have standing to

-11-

challenge an infringement of their own Fourth Amendment rights, <u>see, e.g.,</u> <u>United States</u> v. <u>Kimball</u>, 25 F.3d 1, 4 (1st Cir. 1994) (discussing Fourth Amendment standing in the context of a motion to suppress evidence), the decision in <u>Roccio</u> was not predicated upon the taxpayer's lack of standing.  Instead, the court explicitly reached the merits of the taxpayer's substantive Fourth Amendment contentions.

Second, Rogers advances a statutory argument aimed at undercutting the validity of the levy that formed the basis of the warrantless seizure.  This invalidity would distinguish his case from <u>Roccio</u>, but only if we could accept Rogers's argument.  We cannot.  A levy is defined by the Internal Revenue Code as "includ[ing] the power of distraint and seizure by any means."  26 U.S.C. § 6331(b).  Rogers claims that this broad grant of power is in fact limited by the language in § 6331(a) that indicates that "[l]evy may be made upon the accrued salary or wages of any officer, employee, or elected official, of the United States, the District of Columbia, or any agency or instrumentality of the United States or the District of Columbia . . . ."  26 U.S.C. § 6331(a).  According to Rogers, this provision means that the power of levy only applies to the "salary or wages" of a federal employee.

We reject this absurd contention.  Such a ruling renders meaningless the plain language of § 6331(b) indicating that the power to levy is broad.  Moreover, § 6331(b) explicitly indicates that the

-12-

IRS may levy against multiple forms of property, including real or personal as well as tangible and intangible property. 26 U.S.C. § 6331(b). We decline to adopt a reading of one subsection that would completely nullify another. Roccio controls this case.

**B. The claims against Martin**

This same Fourth Amendment analysis is applicable to the claims against Martin, who was present at the scene only at the request of the IRS agents. Our disposition of the claims against the IRS agents, however, rests, in part, upon the absence of necessary factual averments in the complaint. The claims against Sergeant Martin were disposed of at summary judgment, where the factual record was more developed. We must therefore evaluate those claims in light of that record. Taking those facts in the light most favorable to Rogers reveals that the omissions in the complaint were not inadvertent. Nothing in the summary judgment record indicates that the seizure here was improper.

Rogers admitted in his deposition that his driveway could be seen from a public way. Service vehicles would occasionally make turns in the driveway and delivery personnel would sometimes pass through the driveway to reach his door. Furthermore, his driveway was not posted with any signs or obstructions that would hide his vehicles from public view. These facts conclusively indicate that Rogers did not have a reasonable expectation of privacy in his driveway and that therefore a

warrant was not required.  <u>Roccio</u>, 981 F.2d at 591; <u>Hensel</u>, 699 F.2d at 32.  Because Rogers does not allege any conduct by Martin that could form an independent factual basis for his claims, our conclusion regarding the propriety of the seizures by the IRS agents disposes of all the claims against Martin.

## C. The claims against Edmonds and Perry

Our conclusion that Rogers cannot maintain his claims against Vicuna, Kilmartin and Martin is fatal to the claims against Edmonds and Perry as well.  We can add nothing to the district court's analysis on this point.

> Rogers asserts constitutional claims of denial of due process against Edmonds and Perry arising from their refusal to permit Rogers to file a stolen vehicle report for the two vehicles seized by the IRS.  As explained earlier, the IRS was authorized to seize Rogers' [sic] vehicles and they were seized in a lawful manner.  The cars were, therefore, not stolen.  Thus, the actions of Edmonds and Perry in refusing to accept a stolen car report were proper.

**<u>Affirmed.</u>**

-14-