**Maria COYNE, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**Civil Action No. 02–10282–JLT.**

United States District Court, D. Massachusetts.

Nov. 14, 2002.

Harry L. Miles, Green, Miles, Lipton, White & Fitz-Gibbon, Northampton, MA, for Plaintiff.

Roberta T. Brown, U.S. Attorney's Office, Boston, MA, for Defendants.

## MEMORANDUM

TAURO, District Judge.

Plaintiff Maria Coyne sues both the United States and FBI Special Agent Margaret Cronin ("S.A.Cronin") in her individual capacity, seeking damages for negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, and a violation of Plaintiff's constitutional rights under the First, Fourth and Fifth Amendments. The United States and S.A. Cronin have individually moved to dismiss the complaint, arguing that this court lacks subject matter jurisdiction over Plaintiff's claims, that the Plaintiff fails to state a claim for which relief can be granted, and that S.A. Cronin is immune from suit in tort because at the time of the alleged violations she was acting within the scope of her employment. Plaintiff, on the other hand, has asked this court to vacate the U.S. Attorney's certification that S.A. Cronin was acting within the scope of her employment when the alleged negligence occurred.

## BACKGROUND

Plaintiff is the ex-wife of John Coyne ("Mr. Coyne") and the mother of his four children. Mr. Coyne was serving the last year of a 15–year prison sentence at Concord State Prison in Concord, Massachusetts when Plaintiff brought this action. S.A. Cronin is an FBI agent operating principally out of the FBI's Boston, Massachusetts field office.[1] In the Summer and Fall of 1999, Mr. Coyne began speaking with S.A. Cronin, an unnamed Assistant U.S. Attorney, two unnamed FBI agents, and a police officer from Cambridge, Massachusetts who was assigned to a task force (collectively referred to as "the Agents").[2] Mr. Coyne was providing information about prison corruption.

---

1. Pl.'s Compl. ¶ 4.

2. Pl.'s Compl. ¶ 8.

At one of the meetings between Mr. Coyne and the Agents, S.A. Cronin asked Mr. Coyne to feign interest in participating in an armored car robbery being planned by an inmate in Norfolk State Prison ("Norfolk inmate"). Mr. Coyne was to write a letter to the Norfolk inmate explaining that Mr. Coyne could prove useful if the Norfolk inmate was willing to wait until Mr. Coyne was released before committing the robbery. Because mail cannot be sent directly from one penal institution to another, S.A. Cronin instructed Mr. Coyne to send a "dummy letter," addressed in his own handwriting, along with a second letter containing more information for the FBI, to an FBI mail drop at an address S.A. Cronin provided.[3] S.A. Cronin stated that the FBI would forward the dummy letter to the Norfolk inmate's girlfriend and would retain the second letter.[4] Mr. Coyne did as S.A. Cronin instructed, and sent the two letters to the FBI mail drop.

On or about October 5, 1999, Mr. Coyne met with S.A. Cronin at the Concord State Prison. S.A. Cronin stated that the FBI had made a "terrible mistake" because it had inadvertently forwarded the entire package to the Norfolk inmate's girlfriend.[5] The Norfolk inmate's girlfriend had thus received Mr. Coyne's second letter, intended only for the FBI and revealing that Mr. Coyne was acting as a government informant. S.A. Cronin expressed concern for the safety of Mr. Coyne and his family.[6]

In the evening of the same day, S.A. Cronin contacted Plaintiff and related to her the FBI's mistake. S.A. Cronin instructed Plaintiff to consider either relocation or entrance into the Federal Witness Protection Program ("WPP"), and indicated to Plaintiff that she should make an immediate decision as to which option the FBI should implement.[7] That same evening, S.A. Cronin apparently also informed the local police in Plaintiff's town of her concerns about Plaintiff's safety.[8] The following day, S.A. Cronin again contacted Plaintiff and reiterated that she believed that Plaintiff should decide quickly whether Plaintiff wished to be relocated or placed in the WPP.[9] At the direction of S.A. Cronin, Plaintiff took immediate steps to increase security for herself and her children.[10]

Two days after S.A. Cronin's second telephone call to Plaintiff, Plaintiff called S.A. Cronin.[11] According to Plaintiff's Complaint, S.A. Cronin was not responsive to Plaintiff's concerns and abruptly ended the conversation.[12] Plaintiff has not spoken to S.A. Cronin since that date. Plaintiff called the FBI several days later, however, and spoke with Agent John G. Trahon from the Albany FBI office. Agent Trahon did not provide Plaintiff with any information, security, nor plans with respect to Plaintiff's safety.[13] Plain-

---

3. Pl.'s Compl. ¶¶ 10–12.

4. Pl.'s Compl. ¶ 13.

5. Pl.'s Compl. ¶¶ 15–17.

6. Pl.'s Compl. ¶ 19.

7. Pl.'s Compl. ¶¶ 20–23.

8. Pl.'s Compl. ¶ 25. Plaintiff further alleges that, at some point after her first conversation with S.A. Cronin, someone contacted a faculty member from the high school that several of Plaintiff's children attend and expressed concern for the safety of Plaintiff and her children. Pl.'s Compl. ¶ 33.

9. Pl.'s Compl. ¶ 26.

10. Pl.'s Compl. ¶ 27.

11. Pl.'s Compl. ¶ 28.

12. Pl.'s Compl. ¶ 29.

13. Pl.'s Compl. ¶ 32.

tiff has had no further communication with anyone connected to the FBI.[14]

Plaintiff seeks monetary compensation for the FBI's negligence, alleging that she "has been placed in permanent and tangible fear for her safety and for the safety of her family, and was caused to suffer and will continue to suffer great distress of body and mind, and other diverse injuries."[15]

## DISCUSSION

Both the United States and S.A. Cronin have moved to dismiss Plaintiff's Complaint. When ruling on a Motion to Dismiss, this court accepts as true all factual allegations and draws all reasonable inferences in the non-movant's favor.[16] The court will only dismiss claims where no set of alleged facts would entitle Plaintiff to relief.[17]

## SPECIAL AGENT CRONIN

### I. *The Action in Tort*

On June 18, 2002, United States Attorney Michael J. Sullivan ("U.S. Attorney") certified pursuant to 28 U.S.C. § 2679(d)(1) that S.A. Cronin was "acting within the scope of [her] office or employment at the time of the incident."[18] Plain-

tiff has filed a motion to vacate that certification, arguing that the U.S. Attorney gave no indication that he investigated whether S.A. Cronin's actions actually fell within the scope of her employment.[19] S.A. Cronin has filed a Motion to Dismiss Plaintiff's negligence claims, arguing that because of the U.S. Attorney's certification she is immune from suit.

■ Under 28 U.S.C. § 2679(d)(1), when the U.S. Attorney[20] certifies that a defendant government employee was acting within the scope of her employment during the incident out of which a negligence claim arises, "any civil action or proceeding commenced upon such claim ... shall be deemed an action against the United States ... and the United States shall be substituted as the party defendant."[21] Thus, if the U.S. Attorney's certification stands, Plaintiff's negligence suit against S.A. Cronin must be dismissed and Plaintiff can proceed only against the United States.[22] Ordinarily the substitution of the United States, a financially reliable defendant, for a government employee defendant would not be objectionable to a plaintiff.[23] But the Federal Tort Claims Act ("FTCA") contains exceptions that immunize the United States from suit.

---

14. Pl.'s Compl. ¶ 34.

15. Pl.'s Compl. ¶ 37.

16. *See* Fed.R.Civ.P. 12(b)(6); *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988).

17. *See Gooley*, 851 F.2d at 515.

18. 28 U.S.C. § 2679(d)(1).

19. *See* Pl.'s Mot. to Vacate Certificate of United States Att'y Re Scope of Employment & Supporting Mem. ("Pl.'s Mot. to Vacate Certificate") ¶ 2.

20. Although the statute indicates that the Attorney General is responsible for making the certification, the federal regulations authorize the U.S. Attorneys to make the 28 U.S.C.

§ 2679(d) certification as well. *See* 28 C.F.R. § 15.3 (2002).

21. 28 U.S.C. § 2679(d)(1).

22. *See* 28 U.S.C. § 2679(b)(1). Although the statute would preclude Plaintiff's negligence suit against S.A. Cronin, along with any other suit for damages arising from the same subject matter, the statute specifically exempts from its operation suits brought against a government employee for a constitutional violation. *See* 28 U.S.C. § 2679(b)(2)(A). Barring some other ground for dismissal, Plaintiff's suit alleging a constitutional violation could therefore proceed against S.A. Cronin.

23. *See Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 422, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995).

Sometimes, therefore, the substitution of the United States for a government employee defendant results in dismissal of the plaintiff's suit altogether.[24]

■ In the ordinary case, therefore, the U.S. Attorney is acting against the United States' financial interest by certifying that a government employee was acting within the scope of his employment and substituting the United States as the defendant. It is the unusual case in which the certification is in the United States' financial interest because the substitution of the United States causes the suit to be dismissed in its entirety. In any event, the U.S. Attorney's certification "does not conclusively establish as correct the substitution of the United States as defendant in place of the employee."[25] For purposes of substitution, therefore, the U.S. Attorney's certification is open to judicial review.[26]

■ When a plaintiff challenges a U.S. Attorney's certification that the Government employee was acting within the scope of his employment, the district court reviews the scope of employment issue *de novo*, and the U.S. Attorney's determination is accorded no deference.[27] The scope of employment is defined by state law,[28] and the burden of proving that the defendant was acting outside the scope of his government employment is on the plaintiff.[29] Although a plaintiff challenging a scope of employment certification may be entitled to an evidentiary hearing, one is not required. The plaintiff "must justify the need for [a hearing] by presenting evidence of facts that create a genuine conflict in the immunity-related facts; the party may not rely primarily on generalities in unverified pleadings."[30]

■ Plaintiff asks this court to vacate the U.S. Attorney's certification until there has been a hearing. In support of her request, Plaintiff argues that the U.S. Attorney failed to indicate in the certification whether he investigated the matter.[31] This, however, is not a ground sufficient to vacate the certification.[32] As already stated, the remedy for any defect in the U.S.

24. *See id.*

25. *Id.* at 434, 115 S.Ct. 2227.

26. *See id.*

27. *See Operation Rescue Nat'l v. United States,* 975 F.Supp. 92, 102 (D.Mass.1997).

28. *See Lyons v. Brown,* 158 F.3d 605, 609 (1st Cir.1998).

29. *See Day v. Mass. Air Nat'l Guard,* 167 F.3d 678, 685 (1st Cir.1999).

30. *Bergeron v. Henderson,* 47 F.Supp.2d 61, 68 (D.Me.1999); *see also Lyons,* 158 F.3d at 610 (noting that plaintiff might be entitled to an evidentiary hearing if her proffer warranted one and if the facts alleged were in controversy).

31. *See* Pl.'s Mot. to Vacate Certificate ¶ 2. Plaintiff also alleges that S.A. Cronin, in making her Motion to Dismiss, herself stated that she did not have the authority to offer the protection of the WPP. *See* Pl.'s Mot. to Vacate Certificate ¶ 3. Plaintiff concludes from this that S.A. Cronin was acting outside the scope of her employment. *See id.* Plaintiff is presumably referring to S.A. Cronin's statement that "decisions regarding entrance into the Witness Protection Program are in the absolute discretion of the *Attorney General.*" Mem. in Supp. of Motion. to Dismiss of Def. Margaret Cronin at 5 (emphasis added). This statement, referencing the bar to civil liability on account of any decision to provide or not to provide protection, is plainly not an admission by S.A. Cronin that she was acting outside the scope of her employment when she discussed the WPP with Plaintiff. S.A. Cronin simply mentioned to Plaintiff the possibility of entering the WPP. Presumably, the Attorney General or someone authorized by him would have had to approve a decision by Plaintiff to enter the WPP. But Plaintiff cannot realistically expect that the Attorney General is the only person who can approach a potential WPP participant and that anyone else who does so is acting outside the scope of their employment.

32. *See Operation Rescue Nat'l,* 975 F.Supp. at 102.

Attorney's certification is *de novo* review applying the relevant state's law.[33] This court does not believe that a hearing on this issue is warranted because Plaintiff has not presented evidence of a factual conflict as to the scope of S.A. Cronin's employment.[34]

■ Taking as true all the allegations in Plaintiff's complaint, this court finds that the U.S. Attorney's certification was warranted, and the United States is substituted for S.A. Cronin as the defendant in Plaintiff's suit for negligence, negligent infliction of emotional distress and intentional infliction for emotional distress. Massachusetts applies the common law test when considering whether an employee was acting within the scope of her employment.[35] A court should not construe the scope of an employee's employment restrictively, and should consider whether the conduct in question (1) was of the kind the employee was hired to perform; (2) occurred within authorized temporal and spatial limits; and (3) was motivated, at least in part, by a purpose to serve the employer.[36] Plaintiff has not alleged any facts, either in her Complaint or in her Motion to Vacate, that indicate that S.A. Cronin was performing tasks she was not hired to perform, that she was acting outside authorized spatial or temporal limits, or that she was not even partially motivated by a purpose to serve her employer. On its face, the U.S. Attorney's certification that S.A. Cronin was acting within the scope of her employment when she discussed security measures with the ex-wife of an exposed informant is entirely reasonable. Plaintiff's causes of action in tort (Counts One, Two and Three of the Complaint), therefore, are dismissed as against S.A. Cronin, and the United States is substituted as the defendant.

## II. *The Bivens Claim*

■ Notwithstanding the FTCA, a plaintiff may seek monetary redress from a federal officer for a violation of the plaintiff's constitutional rights.[37] In her Complaint, Plaintiff states that S.A. Cronin deprived her "of her rights to personal liberty, safety and security, due process of law, freedom of association, and travel, guaranteed by the First, Fourth, and Fifth Amendments to the Constitution."[38] Although this court must accept the facts alleged in the Complaint as true, such allegations must rise to the level of a constitutional violation.[39] Neither Plaintiff's

33. *See id.*

34. *See Bergeron*, 47 F.Supp.2d at 68.

35. *See Clickner v. City of Lowell*, 422 Mass. 539, 663 N.E.2d 852, 855 (1996).

36. *See id.*

37. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (finding a cause of action under the Fourth Amendment); *Davis v. Passman*, 442 U.S. 228, 230, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (finding a cause of action under the Fifth Amendment); *Bush v. Lucas*, 462 U.S. 367, 378, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) (recognizing a possible cause of action under the First Amendment generally though not under the facts presented); *Carlson v.*

*Green*, 446 U.S. 14, 20, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (finding a cause of action under the Eighth Amendment). An action under the *Bivens* doctrine is akin to one under 42 U.S.C. § 1983. *See Day v. Mass. Air Nat'l Guard*, 167 F.3d 678, 683 (1st Cir.1999) (noting that while under *Bivens* a plaintiff can seek to redress a constitutional violation under color of federal law, § 1983 offers redress for constitutional violations under color of state law).

38. Pl.'s Compl. ¶ 46.

39. *See McMillen v. United States Dep't of Treasury*, 960 F.2d 187, 190 (1st Cir.1991) (approving of the Seventh Circuit's statement in *Cameron v. Internal Revenue Serv.*, 773 F.2d 126, 129 (7th Cir.1985), that "[n]ot every interference with peace of mind is a deprivation

Complaint nor her opposition to S.A. Cronin's Motion to Dismiss point to any authority in support of her assertion that S.A. Cronin's behavior constituted a violation of Plaintiff's rights under any provision of the United States Constitution.

■ Plaintiff alleges that S.A. Cronin violated her Fifth Amendment right to liberty and due process of law. Negligent conduct, however, even if it deprives a person of life, liberty or property, does not constitute a constitutional deprivation under the Fifth Amendment to the Constitution.[40] Plaintiff, therefore, must allege an intent on the part of S.A. Cronin to interfere with her constitutional right to liberty and due process of law. She has not done so.

In *Crawford–El v. Britton*,[41] the United States Supreme Court rejected the D.C. Circuit's requirement that a plaintiff suing a government official in her individual capacity allege improper motive with clear and convincing evidence, finding that the D.C. Circuit had imposed too heavy an evidentiary burden on the plaintiff.[42] Even so, the Supreme Court recognized in dicta that the D.C. Circuit's heightened pleading standard was an attempt "to address a potentially serious problem: Because an official's state of mind is 'easy to allege and hard to disprove,' insubstantial claims that turn on improper intent may be less amenable to summary disposition than other types of claims against government officials. This category of claims, therefore, implicates obvious concerns with the social costs of subjecting public officials to discovery and trial, as well as liability for damages."[43] The Supreme Court went on to say that for constitutional claims in which improper motive is an essential element, trial courts, prior to permitting discovery, "may insist that the plaintiff 'put forward specific, nonconclusory factual allegations' that establish improper motive causing cognizable injury in order to survive a prediscovery motion for dismissal or summary judgment."[44] Plaintiff does not put forward *any* specific, nonconclusory factual allegations establishing an improper motive on the part of S.A. Cronin. The allegations made in her Complaint, therefore, are insufficient to support her Fifth Amendment claim.

Plaintiff's claims that S.A. Cronin violated her rights to freedom of association and travel similarly fail. In finding that an allegation of negligence was insufficient to support a claim that a government official had violated a plaintiff's rights to life, liberty and due process of law, the *Daniels* Court pointed to the language of the Constitution and found that use of the word "deprived" connoted more than a negligent act.[45] Furthermore, the Court noted that

---

of liberty within the meaning of the Constitution"); *Rogers v. Vicuna,* 264 F.3d 1, 5 (1st Cir.2001).

**40.** *See Daniels v. Williams,* 474 U.S. 327, 328 (1986) ("We conclude that the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property." (emphasis in original)); *see also DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 202, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) (noting that the Supreme Court has stated numerous times that the Due Process Clause of the 14th Amendment does not transform every tort into a constitutional violation).

**41.** 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998).

**42.** *See id.* at 594–595, 118 S.Ct. 1584; *Judge v. City of Lowell,* 160 F.3d 67, 73–74 (1st Cir.1998).

**43.** *Crawford–El,* 523 U.S. at 584–85, 118 S.Ct. 1584 (internal citations omitted).

**44.** *Id.* at 598, 118 S.Ct. 1584 (internal citations omitted).

**45.** *See Daniels,* 474 U.S. at 330, 106 S.Ct. 662 (citing *Parratt v. Taylor,* 451 U.S. 527, 548–49, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)).

the federal courts should not be flooded with lawsuits in which there had been no affirmative abuse of power.[46] Pointing to Chief Justice Marshall's famous admonition that "we must never forget that it is a *constitution* we are expounding,"[47] the Court noted that "[o]ur Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society."[48] The Supreme Court has long endeavored to prevent the Constitution from becoming a "font of tort law."[49]

This reasoning also compels a finding that allegations of negligence are insufficient to support a plaintiff's claim that a government official violated that plaintiff's rights to freedom of association or travel. To find differently would be to allow a *Bivens* action for deprivation of the right to freely associate or travel to lie against any United States Postal Service employee who, while driving his mail truck as he delivers mail, negligently hits an individual and causes disabling injury. In other words, to find differently would be to convert the Constitution into a font of tort law. This court finds that in order to sustain a *Bivens* action against a government official for an alleged violation of Plaintiff's right to freedom of association or travel, Plaintiff must allege more than negligence. Plaintiff must thus make specific, nonconclusory factual allegations that establish improper motive. As was true with Plaintiff's due process claim, her Complaint entirely fails to do so.

Finally, to the extent that Plaintiff claims that S.A. Cronin's failure to place her in the WPP is in and of itself a constitutional violation, that claim must fail as well. The statute that authorizes the WPP expressly precludes civil liability for "any decision to provide or not to provide protection."[50] Because Plaintiff has failed to allege an actionable violation of her constitutional rights against S.A. Cronin, Plaintiff's *Bivens* action (Count Four of the Complaint) against S.A. Cronin is dismissed.

### UNITED STATES

As an initial matter, Plaintiff concedes that this court does not have subject matter jurisdiction under the FTCA to hear a constitutional tort claim against the Government.[51] This portion of Plaintiff's Complaint (Count Four) is, therefore, dismissed. Plaintiff's Complaint, however, has also alleged an action in tort against the United States (Counts One, Two and Three). Through the FTCA, the United States waives its sovereign immunity and, thus, opens itself up to suit for tortious acts committed by its employees. There exist, however, certain exceptions to the FTCA under which the United States retains its immunity, depriving this court of subject matter jurisdiction.[52]

One such exception is called the "discretionary function exception," so named because it protects the Government from suit for claims "based upon the exercise or performance or the failure to exer-

---

46. *Id.*

47. *M'Culloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 407, 4 L.Ed. 579 (1819) (emphasis in original).

48. *Daniels,* 474 U.S. at 332, 106 S.Ct. 662.

49. *Id.; see also Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976);

*Parratt v. Taylor,* 451 U.S. 527, 544, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

50. 18 U.S.C. § 3521.

51. *See F.D.I.C. v. Meyer,* 510 U.S. 471, 477, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994).

52. *See Santoni v. Potter,* 2002 WL 1930000, at *8 (D.Me. Aug.19, 2002); 28 U.S.C. § 2680.

cise or perform a discretionary function or duty . . . whether or not the discretion involved be abused."[53]  The discretionary function exception exists to protect " 'judicial second guessing' of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort."[54]  The Supreme Court defines a discretionary function as one in which there exists an "element of judgment or choice."[55]  The Court has laid out a two-part inquiry that asks, *first*, whether the challenged action was a matter of choice for the acting official and, *second*, whether the official's discretion was based on considerations of public policy.[56]  If an action meets both prongs of this test (the *"Gaubert* test"), and is thus within the discretionary function exception, even an abuse or negligent exercise of discretion is not actionable.[57]  An action does not fall within the discretionary function exception "if a federal statute, regulation or policy specifically prescribes a course of action for [an official] to follow, because [the official] has no rightful option but to adhere to the directive."[58]  A presumption exists, however, that if there is an exercise of discretion, that exercise is based on considerations of public policy.[59]  It is the plaintiff's burden to show that the decision does not lend itself to a policy analysis.[60]

■  S.A. Cronin's actions in dealing with Plaintiff fall within the discretionary function exception and Plaintiff's claims against the United States must accordingly be dismissed.  In the first place, the decision whether or not to place an individual into the WPP falls squarely within the discretionary function exception to the FTCA. The statute authorizing witness protection and relocation states that the Attorney General *may* provide for relocation or other protection, and expressly precludes any civil liability of the United States and its officers and employees for any decision to provide or not to provide protection.[61]

To the extent that Plaintiff points to S.A. Cronin's actions, rather than the action or inaction of the Attorney General, her claim also fails.  Although the Attorney General has the ultimate responsibility for deciding whether an at-risk individual should enter the WPP, those officers that deal day-to-day with any informant and his family are able to make the initial recommendation as to whether the WPP may be necessary.  Those officers, using their discretion, determine which cases to bring to the attention of the Attorney General so that the Attorney General can act accordingly by either placing an individual in the WPP or not.  In her Complaint, Plaintiff alleges that S.A. Cronin "specifically told the Plaintiff that she should consider ei-

---

53.  28 U.S.C. § 2680(a)

54.  *Campbell v. United States,* 167 F.Supp.2d 440, 447–48 (D.Mass.2001) (citing *Magee v. United States,* 121 F.3d 1, 5 (1st Cir.1997)).

55.  *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988) (citing *Dalehite v. United States, 346 U.S. 15, 34, 73 S.Ct. 956, 97 L.Ed. 1427 (1953)* ).

56.  *See United States v. Gaubert,* 499 U.S. 315, 322–23, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Irving v. United States,* 162 F.3d 154, 162 (1st Cir.1998).

57.  *See Berkovitz,* 486 U.S. at 537, 108 S.Ct. 1954.

58.  *Magee v. United States,* 121 F.3d 1, 4 (1st Cir.1997) (quoting *Gaubert,* 499 U.S. at 322, 111 S.Ct. 1267).

59.  *See Shansky v. United States,* 164 F.3d 688, 692 (1st Cir.1999).

60.  *See id.*

61.  18 U.S.C. § 3521(a)(1), (3).

ther relocation or entrance into the Federal Witness Protection Program." This court reads the Complaint as thus alleging that S.A. Cronin, acting within her discretion, believed that Plaintiff's situation should be brought to the attention of the Attorney General, if Plaintiff was willing to entertain the idea of entering the WPP. This was plainly a matter of choice for S.A. Cronin and the first prong of the Supreme Court's test is thus satisfied.

The second prong, whether the decision reflects considerations of public policy, is also satisfied. Even without the presumption that the decision was one of public policy, S.A. Cronin's determination that Plaintiff might be a candidate for the WPP was certainly one grounded in public policy. Not every person from whom law enforcement receives information needs the protection of the WPP. In making the determination as to which cases to bring before the Attorney General an officer of

necessity weighs the benefit to society of protecting an individual and receiving the information he has against the cost of placing the individual in the WPP.[62]

■ Plaintiff's final attempt at establishing the Government's liability is to allege that she is challenging the negligent execution of a decision to protect, rather than the decision itself. In other words, Plaintiff attempts to remove her claim from within the discretionary function exception by arguing that the Government promised to protect her, knowing the danger she was in, and failed to do so. Plaintiff's support for the argument that, having promised to protect her, the United States can be held liable for a negligent failure to do so[63] relies on language found in *Dalehite* and *Indian Towing* that while actions taken at the planning or policymaking level are precluded by the discretionary function exception to the FTCA, negligence at the operational level is actionable.[64] The

---

**62.** *See Ochran v. United States,* 117 F.3d 495, 501 (11th Cir.1997) (finding that decisions as to how to protect a victim threatened by a suspected offender are susceptible to policy analysis); *Piechowicz v. United States,* 885 F.2d 1207, 1213 (4th Cir.1989) (noting that the criteria deemed important in the decision-making process-for example, the witness' importance to the prosecution and local law enforcement's inability to protect the witness adequately-are "freighted with policy overtones"); *Bergmann v. United States,* 689 F.2d 789, 793 (8th Cir.1982) ("Determining whether protection of the witness is advantageous to the federal interest rather obviously calls for a policy decision of the discretionary nature."); *Taitt v. United States,* 770 F.2d 890, 893 (10th Cir.1985) (finding that "[t]he determination whether protection of a witness is advantageous to the Federal interest involves a discretionary decision").

**63.** *See, e.g., Indian Towing Co. v. United States,* 350 U.S. 61, 69, 76 S.Ct. 122, 100 L.Ed. 48 (1955) (finding that the FTCA did not preclude liability where the Government had affirmatively undertaken to warn the public); *Miller v. United States,* 530 F.Supp. 611,

615 (E.D.Pa.1982) (finding that the plaintiff could survive a motion to dismiss because plaintiff alleged that Government had promised to protect and had subsequently failed to do so); *Piechowicz v. United States,* 685 F.Supp. 486, 498 (D.Md.1988), *aff'd,* 885 F.2d 1207 (4th Cir.1989) (finding that the Government may have a duty to protect if it "voluntarily assumed or incurred that duty to a specific individual"); *Merced v. City of New York,* 856 F.Supp. 826, 831 (S.D.N.Y.1994) (citing *Piechowicz,* 685 F.Supp. at 498, for the proposition that the Government may owe a duty if it voluntarily assumed one, although finding that plaintiff had failed to show such a voluntary assumption); *but see Ochran,* 117 F.3d at 505 (finding that even though the government employee may have assumed a duty to protect plaintiff, a negligent failure to do so was not actionable because the decision how to protect, as well as the decision to protect, involved the exercise of policy judgment and was thus within the discretionary function exception).

**64.** *See Dalehite v. United States,* 346 U.S. 15, 42, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); *Indian Towing Co.,* 350 U.S. at 64, 76 S.Ct. 122.

dichotomy, in other words, is that while the decision *whether* to provide a lighthouse is not a basis for a negligence suit, failure to maintain the lighthouse adequately (a decision *how* to maintain the lighthouse) is. The Supreme Court has expressly disavowed this distinction, however, holding that "discretionary conduct is not confined to the policy or planning level." [65] The relevant inquiry, then, is whether a negligent determination as to *how* to protect a witness or his family is actionable, or precluded as within the discretionary function exception to the FTCA. Stated differently, the inquiry is whether the "how" determination meets both prongs of the *Gaubert* test. Because this court believes that just as the decision whether to protect an individual is one that involves discretion and is informed by policy, so too is any decision how to protect an individual. Thus, even if Plaintiff's Complaint alleges that her action is predicated on negligent execution of the decision to protect her, Plaintiff's action is barred by the discretionary function exception to the FTCA and her Complaint against the United States must be dismissed.

## CONCLUSION

For the reasons stated above, Defendant United States and Defendant S.A. Cronin's Motions to Dismiss are ALLOWED and Plaintiff's Motion to Vacate Certificate is DENIED. AN ORDER WILL ISSUE.

---

**65.** *United States v. Gaubert*, 499 U.S. 315, 325, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991).